IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALAMOS ASSET MANAGEMENT, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 18-1510 (MN) ) |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | ) ) ) ) |
| Defendant. | ) |

# MEMORANDUM OPINION

Jennifer C. Wasson, Carla M. Jones, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Matthew J. Schlesinger, Colin P. Watson, Robert W. Jacques, COVINGTON & BURLING LLP, Washington, District of Columbia – Attorneys for Plaintiff

Francis G.X. Pileggi, ECKERT SEAMANS CHERIN & MELLOT, LLC, Wilmington, DE; Ronald P. Schiller, Daniel J. Layden, HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER, Philadelphia, PA – Attorneys for Defendant

May 15, 2019
Wilmington, Delaware


**NOREIKA, U.S. DISTRICT JUDGE:**

Before the Court is Defendant Travelers Casualty and Surety Company of America's ("Defendant" or "Travelers") Motion to Transfer Venue. (D.I. 11). Defendant moves pursuant to 28 U.S.C. § 1404(a) to transfer this action to the Northern District of Illinois. (*Id.*). Plaintiff Calamos Asset Management, Inc. ("Plaintiff" or "CAM") opposes transfer. (D.I. 38). For the reasons set forth below, Defendant's motion to transfer will be denied.

## I. <u>BACKGROUND AND PROCEDURAL HISTORY</u>

Plaintiff originally filed this insurance coverage action in Delaware Superior Court on September 7, 2018, seeking coverage for losses incurred as a result of shareholder proceedings in the Delaware Court of Chancery. (*See* D.I. 1-1 ¶ 3). In 2016, Plaintiff purchased three Directors & Officers ("D&O") insurance policies. (*Id.* ¶¶ 8-10). Plaintiff purchased a primary D&O policy from XL Specialty Insurance Company ("XL") and a first-layer excess D&O policy from Continental Casualty Company ("Continental"). (*Id.* ¶¶ 8-9). Plaintiff also purchased a second-layer excess Directors & Officers ("D&O") policy ("the Travelers Policy") from Defendant. (*Id.* at ¶ 10). All three policies were for the period of October 27, 2016 to October 27, 2017 (*id.* ¶¶ 8-10), with the Travelers Policy having an "extended discovery period from February 21, 2017 through February 21, 2023 (D.I. 13 at 3). The Travelers Policy "afford[ed] up to $10 million in coverage, excess of [the] $20 million" provided by the primary policy issued by XL Specialty Insurance Company and the first-layer excess policy issued by Continental. (*Id.*; *see also* D.I. 19 at 2).

On December 19, 2016, Plaintiff "announced that it had reached an agreement in principle to be taken private through a transaction by which an affiliated entity would commence a tender offer to acquire all of the outstanding shares of CAM's Class A common stock" ("the Merger").

(D.I. 1-1 ¶ 37). Following its announcement, various shareholders of Plaintiff brought suits in Delaware's Court of Chancery, alleging breaches of fiduciary duty in connection to the Merger and seeking appraisal under Section 262 of the General Corporation Law of the State of Delaware ("the Underlying Proceedings"). (*Id.* ¶¶ 38, 40). Plaintiff seeks coverage from Defendant from losses resulting from these Underlying Proceedings. (*Id.* ¶ 3).

Following the institution of this action in Superior Court, Defendant filed a parallel action on September 13, 2018 in the United States District Court for the Northern District of Illinois, seeking declaratory judgment that coverage is not available under the Travelers Policy. (D.I. 13 at 8). On September 28, 2018, Defendant filed a Notice of Removal, removing this action from Superior Court to this Court. (D.I. 1). Shortly thereafter, on November 5, 2018, Defendant filed the instant motion to transfer this case to the Northern District of Illinois. (D.I. 11). On the same day, Plaintiff filed a motion to enjoin Defendant from prosecuting the Northern District of Illinois litigation. (D.I. 12). Since the completion of the parties' briefing on both motions, the parallel proceeding in the Northern District of Illinois has been dismissed in favor of this action.[1] *See Travelers Cas. & Sur. Co. of Am. v. Calamos Mgmt., Inc.*, No. 18-C-6280, D.I. 45 at 3-4 (N.D. Ill. Apr. 5, 2019).

## II. LEGAL STANDARD

District courts have the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). However, "[a] plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses," *Helicos Biosciences Corp. v.*

---

[1] Because the parallel proceeding in the Northern District of Illinois has been dismissed, Plaintiff's motion to enjoin (D.I. 12) is denied as moot.

2

*Illumina, Inc.*, 858 F. Supp. 2d 367, 371 (D. Del. 2012) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)), and this choice "should not be lightly disturbed," *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

The Third Circuit has recognized that:

> "[i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to 'consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'"

*Jumara*, 55 F.3d at 879 (citation omitted). The *Jumara* court went on to describe twelve (12) "private and public interests protected by the language of § 1404(a)." *Id.* The private interests include:

> "plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)."

*Id.* at 879 (citations omitted). The public interests include:

> "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases."

*Id.* at 879-80.

The party seeking transfer bears the burden "to establish that a balancing of proper interests weigh[s] in favor of transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Moreover, though courts have "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer," *Jumara*,

3

55 F.3d at 883, the Third Circuit has held that "unless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25.

## III. ANALYSIS

As an initial matter, the parties do not dispute that this action could have originally been brought in the Northern District of Illinois. (*See* D.I. 13 at 9-10; D.I. 19 at 5 n.2). Thus, the only issue before the Court is whether to exercise discretion under § 1404(a) to transfer the case to that district.

### 1. Plaintiff's forum preference

This factor weighs against transfer. "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request" – one that "should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (internal quotations and citation omitted). "Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer." *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761, 763 n.4 (D. Del. 1975).

Defendant argues that Plaintiff's "choice of forum is not entitled to unlimited deference" because "though [Plaintiff] is organized under Delaware law, its headquarters is in Illinois" and "any preference for selecting Delaware as a forum for this action is substantially undermined given Delaware's lack of material connection to this dispute." (D.I. 22 at 3-4). This Court has previously noted that it is "'difficult to understand why the plaintiff's forum choice in and of itself merits less weight when the plaintiff has no ties to the selected forum or when the facts underlying the controversy occurred elsewhere'" and that "'[n]either *Shutte* nor *Jumara* hold or even intimate that

4

a plaintiff's motive in selecting its forum choice is relevant for § 1404(a) purposes.'" *ANI Pharm., Inc. v. Method Pharm., LLC*, No. 17-1097 (MN), 2019 WL 176339, at *8 (D. Del. Jan. 11, 2019) (quoting *VLSI Tech. LLC, v. Intel Corp.*, No. 18-966 (CFC), 2018 WL 5342650, at *2, 5-6 (D. Del. Oct. 29, 2018)). Likewise, here, where Defendant has not challenged the validity of venue or jurisdiction in Delaware, the Court is not convinced that Plaintiff's lack of a physical connection to Delaware should dictate that Plaintiff's choice should receive less deference. Moreover, in this case, Delaware does have a connection to this dispute because Plaintiff seeks coverage for losses stemming from the Underlying Proceedings in Delaware's Court of Chancery. Therefore, Plaintiff's choice is entitled to paramount consideration.

### 2. Defendant's forum preference

This factor favors transfer. Defendant's interest in having this case transferred to the Northern District of Illinois is clear.

### 3. Whether the claims arose elsewhere

This factor is neutral. The Travelers Policy was negotiated and executed in Illinois by Plaintiff. (*See* D.I. 13-1 ¶ 4). This fact weighs in favor of transfer. *See Andrews Int'l, Inc. v. Indian Harbor Ins. Co.*, No. 12-775 (LPS), 2013 WL 5461876, at *3 (D. Del. Sept. 30, 2013). Given, however, that Defendant negotiated the policy out of New York, it could also be said that the claims also arose in New York. Additionally, this action results from Plaintiff seeking coverage for losses stemming from claims pursued under Delaware state law in a Delaware state court, meaning that the claims arose in Delaware as well. Accordingly, given the multiple locations in which the claims could be said to have arisen, this factor is neutral.

5

4. Convenience of the parties as indicated by their relative physical and financial condition

This factor weighs against transfer. Determining convenience of the parties requires the Court to consider: (1) the parties' physical location; (2) the associated logistical and operational costs to the parties in traveling to Delaware – as opposed to the proposed transferee district – for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal. *See MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017) (citing *Memory Integrity, LLC v. Intel Corp.*, No. 13-1804 (GMS), 2015 WL 632026, at *4 (D. Del. Feb. 13, 2015) (internal quotations omitted)).

Defendant argues that this factor weighs in favor of transfer because "Plaintiff has its principal places of business in Illinois" and the Northern District would not be inconvenient. (D.I. 13 at 18). Plaintiff responds by arguing that "'the best indicator of a plaintiff's own convenience is the plaintiff's own choice of forum.'" (D.I. 19 at 11) (quoting *Tessera, Inc. v. Sony Elecs. Inc.*, No. 10-838 (RMB) (KW), 2012 WL 1107706, at *4 (D. Del. Mar. 30, 2012)). Although the Court agrees with Defendant that the Northern District of Illinois would not be inconvenient for Plaintiff, Plaintiff "has chosen to litigate this matter in Delaware and that choice signals its belief that litigation here is ***most*** convenient for it, for whatever its reasons." *Tessera*, 2012 WL 1107706, at *4 (emphasis added). Because Defendant does not argue that Illinois would be more convenient for Defendant and acknowledges that "litigating in Delaware would likely not impose a severe financial hardship on either side," (D.I. 13 at 18), this factor weighs against transfer.

5. Convenience of the witnesses

This factor slightly favors transfer. This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also*

*VLSI*, 2018 WL 5342650, at *7 (citing *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012) (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena")). Moreover, "witnesses who are employed by a party carry no weight," because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). "[T]he Court should be particularly concerned not to countenance undue inconvenience to third-party witnesses . . . who have no direct connection to the litigation." *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 757 (D. Del. 2012), *mandamus denied sub nom. In re Altera Corp.*, 494 F. App'x 52 (Fed. Cir. 2012).

By way of a sworn declaration from Robert E. Plunkett, Senior Claims Counsel to Defendant, Defendant identifies three third-party witnesses located within the Northern District of Illinois. (D.I. 13-1 ¶ 15). Nothing in the declaration or Defendant's papers suggests these third-party witnesses would not be willing to testify at trial. However, because neither party has identified any third-party witnesses in Delaware and Defendant has identified why it would want to call these witnesses at trial, this factor favors transfer, albeit only slightly.

      6.      <u>Location of books and records</u>

This factor is neutral. *Jumara* instructs the Court to give weight to the location of books and records necessary to the case only "to the extent that the files [and other evidence] could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. Here, Defendant's focus is on possible third-party documents in the Northern District of Illinois, as it concedes that "it would not be difficult for the ***parties*** to produce documents in either forum." (D.I. 13 at 16) (emphasis in original). Even if there are third-party documents in Illinois, however, Defendant does not argue

that these documents could not be produced in Delaware. Therefore, because no documents have been identified as being available solely in Illinois or Delaware, this factor is neutral.

### 7. Enforceability of the judgment

This is neutral, as both the District of Delaware and the Northern District of Illinois would be able to equally enforce any judgment.

### 8. Practical considerations

This factor is neutral. The Court must consider "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. Defendant acknowledges that it "does not envision any unique issues regarding practical considerations for trial. Both parties are sophisticated and could try this case in either District." (D.I. 13 at 19 n.12). Plaintiff does not contend otherwise. Therefore, this factor is neutral.[2]

### 9. Relative administrative difficulty due to court congestion

This factor weighs against transfer. The Court takes judicial notice of the most recent Judicial Caseload Profiles,[3] as of December 31, 2018, which indicate that the median length of time between filing and trial for civil cases is 28.7 months in the District of Delaware and 38.3 months in the Northern District of Illinois. The December 31, 2018 profile also indicates that District of Delaware has a lower amount of pending cases per judgeship (596 cases) and percentage of civil cases over three (3) years old (9.6%) than the Northern District of Illinois (759 cases and

---

[2] In its Reply Brief, Defendant contends that "judicial economy would be better served by resolving this dispute in a more encompassing action," i.e., the parallel Illinois proceeding. (D.I. 22 at 7). The parallel Illinois proceeding has since been dismissed. *See Travelers Cas.*, No. 18-C-6280, D.I. 45 at 3-4. Therefore, to the extent that the existence of a parallel proceeding in Illinois weighed in favor of transfer, it no longer does so.

[3] The December 2018 statistics for the District Courts of the United States can be found at: https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2018.pdf.

29.1%, respectively). This District, however, has a higher number of weighted filings (951) than the Northern District (446). The statistics as a whole weigh against transfer. *See, e.g.*, *W.R. Berkley Corp. v. Niemela*, No. 17-32 (GMS), 2017 WL 4081871, at *5 (D. Del. Sept. 15, 2017) ("[I]ncreased time[] from filing to . . . trial [is an] important factor[] that do[es] influence the court's calculus.").

### 10. Local interest in deciding local controversies at home

This factor is neutral. Plaintiff asserts that this factor weighs against transfer because it is a Delaware corporation, and "the formation of a plaintiff, like CAM, in Delaware . . . foster[s] a local interest in Delaware as to the outcome of [a] dispute." (D.I. 19 at 18 (internal quotation marks omitted)). Although Delaware does have an interest, this interest is not necessarily as strong as it would be in "litigation 'solely among Delaware corporations.'" *Harris v. Lord & Taylor LLC*, No. 18-521 (MN), 2019 WL 1854562, at *5 (D. Del. Apr. 25, 2019) (citing *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 760 (D. Del. 2012)). But, it is also not a matter of local interest to Illinois. Although Plaintiff is headquartered there, Defendant is not. Therefore, it is not a "local controversy" in the Northern District of Illinois. *See Rosebud LMS, Inc. v. Salesforce.com, Inc.*, No. 17-1712 (CFC), 2018 WL 6061343, at *7 (D. Del. Nov. 20, 2018) (finding a local controversy did not exist in the proposed transferee district when both parties did not reside there).

### 11. Public policies of the fora

This factor weighs in favor of transfer. Defendant asserts that this factor weighs in favor of transfer because Illinois law applies to this dispute and "Illinois has a strong public policy against the insurability of restitutionary remedies, and as such, the availability of coverage will likely be impacted by such policy." (D.I. 13 at 15). Plaintiff asserts that even if Illinois law

9

applies, "the Illinois public policy that [Defendant] invokes would not be implicated by this dispute" because the plaintiffs in Underlying Proceedings did not seek damages for disgorgement or restitution. (*See* D.I. 19 at 18-19). Although the Court is not in a position at this time to decide if Illinois law governs, should Illinois law apply, it is possible that Illinois's policy regarding insurability of restitution or disgorgement will be implicated. (*See* D.I. 13 at 15-16). Plaintiff has not identified any countervailing Delaware public policy. Therefore, this factor weighs in favor of transfer.

### 12. Familiarity of the trial judge with the applicable state law in diversity cases

This factor is neutral. The parties dispute which state's law should apply – Defendant argues that this case is governed by Illinois law, whereas Plaintiff asserts that Delaware law governs. (*See* D.I. 13 at 12; D.I. 19 at 18). As noted above, the Court is not in a position at this time to determine which state's law governs. Nevertheless, it is clear, as an initial matter, that this case implicates Delaware choice of law principles. (*See* D.I. 13 at 12; D.I. 19 at 15). "It is likely that this Court has more familiarity with Delaware's choice-of-law principles than will the [Illinois] Court, and if Delaware law governs the merits, it is again likely that this Court has more experience there." *Andrews Int'l*, 2013 WL 5461876, at *5. Moreover, should Illinois law apply, this Court is competent to apply state law as required. Indeed, the "federal district courts are regularly called upon to interpret the laws of jurisdictions outside of the states in which they sit." *Mimm v. Vanguard Dealer Servs., LLC*, No. 11-736 (GMS), 2012 WL 4963315, at *8 n.4 (D. Del. Oct. 16, 2012) (internal quotation marks omitted). Thus, this factor is neutral.

### 13. Balancing the private and public factors

A balancing of the twelve *Jumara* factors advises the Court that this case should not be transferred to the Northern District of Illinois. Six factors are neutral, three factors weigh against

transfer, and three factors weigh in favor of transfer. Of the three factors that weigh against transfer, one is of paramount consideration, whereas of the three factors that weigh in favor of transfer, two weigh only slightly in favor of transfer. Therefore, the Court finds that Defendant has not met its heavy burden of showing that the factors weigh strongly in favor of transfer.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion to transfer the case to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). An appropriate order will issue.