IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALAMOS ASSET MANAGEMENT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 18-1510 (MN) |
| ) | |
| TRAVELERS CASUALTY AND SURETY ) | |
| COMPANY OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Jennifer C. Wasson and Carla M. Jones of POTTER ANDERSON & CORROON LLP, Wilmington, DE.; Matthew J. Schlesinger, Colin P. Watson, Robert W. Jacques, and Alexis N. Dyschkant of COVINGTON & BURLING LLP, Washington, DC. *Attorneys for Plaintiff.*

Francis G.X. Pileggi of LEWIS BRISBOIS BISGAARD & SMITH LLP, Wilmington, DE.; Ronald P. Schiller and Daniel J. Layden of HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER, Philadelphia, PA. *Attorneys for Defendant.*

June 25, 2020
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

This is an insurance coverage dispute between a Delaware corporation, Calamos Asset Management, Inc. ("Calamos"), and an excess insurer, Travelers Casualty and Surety Company of America ("Travelers"), about whether Travelers must compensate Calamos for losses incurred as a result of two consolidated actions in Delaware – one seeking appraisal of Calamos' stock pursuant to 8 *Del. C*. § 262 and the other alleging that Calamos' officers and directors breached their fiduciary duties. The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

Currently pending before the Court are multiple motions, including (i) Travelers' Motion to Stay (D.I. 52); (ii) Travelers' Motion for Summary Judgment (D.I. 93); and (iii) Calamos' Motion for Summary Judgment (D.I. 89). In its motion to stay, Travelers requests that the Court stay this action pending the outcome of *In re Solera Coverage Appeals*, Nos. 413,2019 and 418,2019 (Del. Oct. 17, 2019) ("*Solera*"), in which the Delaware Supreme Court will determine an issue of first impression, *i.e.*, whether an appraisal action is a "Securities Claim" within the meaning of a director and officer ("D&O") liability policy. That is an issue in this case. Somewhat complicating matters, however, is the parties' dispute as to whether Calamos' D&O liability policies are governed by Illinois law, where Calamos is headquartered, or Delaware law, where Calamos is incorporated. If Illinois law governs, there would be little reason to stay this case to await a decision from the Delaware Supreme Court.[1] Thus, the Court will first address the parties

---

[1] Travelers argues that the case should be stayed even if Illinois law governs because the Delaware Supreme Court determination would be persuasive authority. (D.I. 53 at 11).

cross-motions for summary judgment regarding which state's law governs the insurance policies. It will then address Travelers' motion to stay.[2]

## I. BACKGROUND

### A. The Insurance Policies

Calamos holds three D&O liability policies: a primary policy with XL Specialty Insurance Company ("XL"); a first-layer excess policy with Continental Casualty Company ("CNA"); and a second-layer excess policy with Travelers. (D.I. 1-1 ¶¶ 8-10). With exceptions not relevant here, the Travelers Policy "incorporates by reference, and affords coverage in accordance with and subject to, the inuring clauses, warranties, definitions, terms, conditions, exclusions and other provisions contained in the" XL primary policy. (D.I. 53-4, Excess Policy Endorsement (page 12 of 14) ¶ 3). In other words, to find the terms and conditions for coverage under the Travelers excess policy, the court must look to the XL primary policy.

The XL primary policy covers losses related to "Securities Claims." (D.I. 53-4 at § I(C), page 60 of 68). Specifically, it states, "[t]he Insurer shall pay on behalf of the Company Loss resulting solely from any Securities Claim first made against the Company during the Policy Period or, if applicable, the Optional Extension Period, for a Company Wrongful Act." (*Id.*). The XL primary policy defines "Securities Claim," in relevant part, as: "a Claim . . . made against any Insured for: (1) any actual or alleged violation of any federal, state, local regulation, statute or rule (whether statutory or common law) regulating securities, including but not limited to the purchase or sale of, or offer to purchase or sell, securities which is: (a) brought by any person or entity based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way

---

[2] Also pending are two motions to exclude opinions of experts. (D.I. 83; D.I. 84). The Court will address those motions in due course.

involving the purchase or sale of, or offer to purchase or sell, securities of the Company . . . ." (*Id*. at § II(Q), page 62 of 68).

### B. The Underlying Proceedings.

In December of 2016, Calamos announced that it had reached an agreement in principle to be taken private through a transaction in which an affiliated entity would commence a tender offer to acquire all of the outstanding shares of Calamos' Class A common stock for $8.25 per share ("the Merger"). (D.I. 1-1 ¶ 37). After the Merger announcement, stockholders brought lawsuits in the Court of Chancery against Calamos, its affiliates, and its directors and officers, alleging breaches of fiduciary duty in connection with the Merger. (*Id*. ¶ 38). These shareholder lawsuits were consolidated into an action captioned, *In re Calamos Asset Management, Inc. Stockholder Litigation, Consolidated* C.A. No. 2017-0058-JTL (hereinafter, "the Stockholder Lawsuits'). (*Id*. ¶ 39).

Also after the Merger Announcement, stockholders brought actions against Calamos in the Court of Chancery seeking, pursuant to 8 Del. C. § 262, an appraisal of the fair value of their Calamos shares. (*Id*. ¶ 40). These appraisal actions were consolidated into an action captioned, *In re Appraisal of Calamos Asset Management, Inc*., Cons. C.A. No. 2017-0139-JTL (hereinafter, "the Appraisal Actions," and collectively with the Stockholder Lawsuits, "the Underlying Proceedings"). (*Id*. ¶ 41). Travelers' denial of certain coverage for the Underlying Proceedings gives rise to the current dispute. (*Id*. ¶¶ 47-48).

### C. The *Solera* Case Pending Before the Delaware Supreme Court

In 2016, a private company acquired Solera Holdings, Inc. ("Solera") in a cash-out transaction, the result of which was that certain Solera stockholders petitioned the Court of Chancery for appraisal of their shares pursuant to 8 *Del. C*. § 262. (D.I. 53-1 ¶ 1). The Court of

Chancery ordered Solera to pay petitioners prejudgment interest of more than $38 million. *Id*. Solera also incurred more than $13 million in attorneys' fees and other costs in defending the appraisal action. *Id*.

Solera requested insurance coverage for the appraisal action from its primary insurer and excess insurers. (*Id*. ¶ 2). As here, the terms of Solera's excess policies follow the terms of the primary policy. (*Id*. ¶ 3). As here, the primary policy was issued by XL. (*Id*. ¶ 2). As here, when the excess insurers denied coverage, Solera sued its insurers in the Delaware Superior Court for breach of contract and declaratory judgment, seeking coverage for the prejudgment interest and defense expenses incurred in the appraisal action. (*Id*. ¶ 2). The insurers moved for summary judgment arguing that they were not obligated to cover Solera's losses in the appraisal action because an appraisal action was not a "Securities Claim" as defined in the policy. (*Id*. ¶¶ 2-3). The Solera Policy defined a "Securities Claim" as a claim against Solera "for any actual or alleged violation of any federal, state or local statute, regulation, or rule or common law regulating securities, including but not limited to the purchase or sale of, or offer to purchase or sell, securities . . . ." (*Id*. ¶ 4). After the Superior Court denied the insurers' motion for summary judgment, the Delaware Supreme Court accepted an interlocutory appeal on this issue, in the action captioned *In re Solera Coverage Appeals*, Nos. 413,2019 and 418,2019 (Del. Oct. 17, 2019) ("*Solera*").

## II.   DISCUSSION

### A.   Choice of Law

The parties dispute whether the insurance policies are governed by the law of Delaware, where Calamos is incorporated, or the law of Illinois, where Calamos is headquartered. The insurance policies themselves contain no choice-of-law clause. In the absence of an express choice-of-law clause, Delaware courts rely on the Restatement (Second) of Conflict of Laws to

determine which state's law applies. *Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 464 (Del. 2017). "There are, in essence, three components to this choice-of-law analysis: (i) determining if the parties made an effective choice of law through their contract; (ii) if not, determining if there is an actual conflict between the laws of the different states each party urges should apply; and (iii) if so, analyzing which state has the most significant relationship." *Id.*

Here, as noted, the policies at issue do not contain a choice of law provision. Neither party addresses the "actual conflict" between Delaware and Illinois law in their choice of law arguments. Instead they focus their arguments on the Restatement's "most significant relationship" test. The Court will assume that there is a meaningful conflict between the states' laws given that the parties are fighting about which law applies, and will follow the parties' lead to focus on the Restatement and the "most significant relationship" test.

To determine which state has the most significant relationship to the dispute, the Restatement is "structured with three layers of guidance." *Id.* at 465. As an initial matter, the Restatement provides a presumption for certain types of contracts. *See* Restatement (Second) of Conflict of Laws (1971) (hereinafter, "Restatement") §§ 189-195. The presumption includes "Life Insurance Contracts" and "Contracts of Fire, Surety or Casualty Insurance," but not D&O liability policies. *See id.* at §§ 192-193. Accordingly, there is no specific presumption applicable in this case.

When no presumption applies, the Restatement provides that the dispute is governed by the law of the state with the "most significant relationship to the transaction and the parties under the principles stated in § 6." Restatement § 188; *Chemtura*, 160 A.3d at 465. The principles stated in § 6 are:

    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,

5

> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

Restatement at § 6.

Several principles identified in Restatement § 6 favor applying Delaware law. First, under Restatement § 6(b), Delaware as a forum has a specific policy regarding officer and director liability. Delaware has adopted 8 *Del. C.* § 145, which authorizes corporations to (i) provide indemnification and advancement to officers and directors for lawsuits arising out of their status as an officer or director, and (ii) to purchase D&O liability policies which insure officers and directors against such claims. Because Delaware law governs the scope and entitlement to indemnification and advancement, applying Delaware law to the D&O policies that actually cover those costs advances the relevant policies of the forum. *See*, *e.g.*, *Mills Ltd. P'ship v. Liberty Mut. Ins. Co.*, C.A. No. 09C-11-174 FSS, 2010 WL 8250837, at *6 (Del. Super. Nov. 5, 2010) (finding under the most significant relationship test that Delaware law governs a D&O coverage dispute because Delaware law authorized the purchase of the D&O liability policy under 8 *Del. C.* § 145(g)); *IDT Corp. v. U.S. Specialty Ins. Co.*, C.A. No. N18C-03-032-PRW-CCLD, 2019 WL 413692, at *6 (Del. Super. Feb. 15, 2019) (same).

Second, under Restatement § 6(c), applying Delaware law recognizes that insured and insurers assessing the likelihood of needing coverage under a D&O liability policy will be more concerned with the policies of Delaware relative to other states. *See Mills P'ship.*, 2010 WL 8250837, at *6 (stating that "[w]hen the insured risk is the directors' and officers' 'honesty and

6

fidelity' to the corporation, and the choice of law is between headquarters or the state of incorporation, the state of incorporation has the most significant relationship"); *IDT Corp.*, 2019 WL 413692 at *6 (same).

Third, courts "consistently have held that Delaware law applies to disputes over directors and officers liability ('D&O') insurance coverage where, as here, the insured companies are Delaware corporations." *Ferrellgas Partners L.P. v. Zurich Am. Ins. Co.*, C.A. No. N19C-05-275-MMJ [CCLD], 2020 WL 363677, at *3-4 (Del. Super. Jan. 21, 2020); *see also Pfizer Inc. v. Arch Ins. Co.*, C.A. No. N18C-01-310-PRW [CCLD], 2019 WL 3306043, at *8 (Del. Super. July 23, 2019) ("[A]pplying Delaware law here accords with this Court's consistent application of Delaware law to resolve disputes over insurance coverage of directors' and officers' liability."). Thus, under Restatement § 6(d), applying Delaware law will protect "justified expectations."

Finally, "Delaware's law ultimately determines whether a director or officer of a Delaware corporation has misbehaved *vis a vis* the corporation, its shareholders, and its investors." *See Mills P'ship.*, 2010 WL 8250837, at *6. Thus, under Restatement § 6(f), applying Delaware law to D&O coverage disputes will ensure that similar claims against officers and directors of Delaware corporations are similarly covered or not covered by their D&O liability policies.

The final step in the most significant relationship test is to take into account the contacts identified in § 188 when applying the principles identified in § 6. *See* Restatement at § 188. Those contacts are: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties. *Id*.

Nothing about these contacts changes the analysis under § 6, because Illinois has little to no relationship to the dispute other than being Calamos' principle place of business. Travelers is

7

not incorporated in and does not operate principally in Illinois. (D.I. 10 ¶ 5). Travelers did not negotiate the policy from Illinois. Instead, the policy was negotiated by a Travelers' underwriter in New York, who now works and lives in Connecticut. (D.I. 94-3, Ex. 4 ¶ 5). The Travelers policy, once underwritten, was issued with a Hartford, Connecticut address. (D.I. 94-1, Ex. 1 at Declarations). In addition, the Travelers policy directed that any notice of claim or loss be sent to a Travelers address in Minnesota. (*Id.*, Item 9). After Calamos made a claim under the Travelers policy for coverage of the Underlying Proceedings, Travelers assigned a New York claims handler and Ohio coverage counsel to monitor the litigation and opine on coverage. (*See*, *e.g.*, D.I. 94-14 (Travelers' Feb. 20, 2017 letter from New York); D.I. 94-8, Ex. 8 (Travelers' May 23, 2017 letter from New York); D.I. 94-8, Ex. 25 (Travelers' Aug. 3, 2018 outside-counsel letter from Ohio attorney)).[3] Applying the principles under § 6 while taking into account the contacts under § 188, the Court holds that under the most significant relationship test, Delaware law governs the D&O liability policies at issue here.

This holding follows a long line of cases holding that where D&O liability coverage is at issue, "and the choice of law is between the [insured's] headquarters or the [insured's] state of incorporation, the state of incorporation has the most significant relationship." *Mills P'ship*, 2010 WL 8250837, at *6 (Del. Super. Nov. 5, 2010) (holding that Delaware, as the insured's state of incorporation, and not Virginia, as the insured's principal place of business, had the most significant relationship to a coverage dispute over a D&O liability policy); *Pfizer*, 2019 WL

---

[3] In connection with the cross-motions for summary judgment, the parties submitted 115 exhibits, many with overlapping numbers. Nevertheless, in their papers, the parties offer citations, such as "Ex. 25", without identifying the brief or declaration to which that exhibit is attached. To the extent further briefing in this case occurs, that parties should keep in mind that "[d]istrict judges are not archaeologists" and the Court will "not excavate masses of papers in search of revealing tidbits" that the parties fail to readily identify. *Nw. Nat. Ins. Co. v. Baltes*, 15 F.3d 660, 662–63 (7th Cir. 1994).

3306043, at *7-8 (holding the same where the company was incorporated in Delaware and headquartered in New York); *Arch Ins. Co. v. Murdock*, C.A. No. N16C-01-104-EMD [CCLD], 2018 WL 1129110, at *8-11 (Del. Super. Mar. 1, 2018) (holding the same where the company was incorporated in Delaware and headquartered in California); *see also IDT Corp.*, 2019 WL 413692, at *6-7 (finding that the most significant relationship test supports application of Delaware law to a D&O coverage dispute where the company was incorporated in Delaware).

Moreover, this holding is not contrary to the Delaware Supreme Court's decisions in *Homeland* or *CNH Industrial*, as Travelers contends. (D.I. 119 at 5). *Homeland* is a statute of limitations case that mentions choice of law in dicta in a footnote and assumes without deciding that plaintiff could proceed under Louisiana's bad faith statute. *Homeland Ins. Co. of New York v. CorVel Corp.*, 197 A.3d 1042, 1046 n.13 (Del. 2018). There is no mention of the "most significant relationship" test. The *CNH Industrial* case largely recaps and applies the Delaware Supreme Court's decision in *Chemtura*. *See Travelers Indemnity Co. v. CNH Indus. Am., LLC*, 2018 WL 3434562, at *1, *3-7 (Del. 2018) (discussing and applying *Chemtura*, 160 A.3d at 459). Both *CNH Industrial* and *Chemtura* applied the most significant relationship test to a comprehensive general liability insurance program providing "expansive non site-specific coverage" throughout the United States and found that, in order for there to be a "a single interpretive approach utilizing a single body of law," the law of the state of the insured's principal place of business governed. *Chemtura*, 160 A.3d at 459-60, 467; *CNH Indus.*, 2018 WL 3434562, at *1. Ultimately, *CNH Industrial* and *Chemtura* apply the "most significant relationship test" to a different type of insurance contract, as evidenced by the fact that both cases, unlike here, had to address the import of Restatement § 193, which provides a specific presumption on choice of law for "contracts of fire, surety or casualty insurance." *Chemtura*, 160 A.3d at 465-66; *CNH Indus.*,

9

2018 WL 3434562, at *6. Because those cases addressed a different type of contract, it is not surprising that the "most significant relationship" test, which is context dependent, led to different results.

### B. Motion to Stay

A court has discretion to stay a case. *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). In exercising that discretion, courts consider three factors: (1) "whether a stay will simplify the issues in question and trial of the case;" (2) "whether a stay will promote judicial economy, *e.g.*, how close to trial has the litigation advanced"; and (3) "whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party, i.e., the balance of harms." *Husqvarna AB v. Toro Co.*, Civ. No. 15-856-SLR, 2016 WL 5213904, at *1 (D. Del. Sept. 20, 2016) (citing *Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 737–38 (3d Cir. 1983)).

The first factor, simplifying the issue for trial, weighs in favor of a stay. The question before the Supreme Court in *Solera* is whether an appraisal action pursuant to 8 *Del. C*. § 262 is a "Securities Claim" within the meaning of a primary policy. The same question is before this Court. In addition, both the primary policy in *Solera* and here were issued by XL, and both policies use similar definitions for "Securities Claim." Finally, this is a nationwide issue of first impression. (D.I. 53 at 10). Thus, a stay would obviate the need for this Court to determine a novel issue of state law while the same issue is pending before the state court of last resort. Courts routinely stay matters if resolution of an action in another forum will streamline proceedings, even if the other proceeding would only resolve some of the issues. *See AgroFresh Inc. v. Essentiv LLC*, No. 16-662 (MN), 2019 WL 2327654, at *1-3 (D. Del. May 31, 2019) ("A stay will simplify the case

because the Federal Circuit's review of the PTAB decision will reduce or at least clarify issues the Court would otherwise address, including in connection with dispositive motions and trial.").

The second factor, considering judicial economy, does not weigh in favor of a stay but does not require denial of the motion to stay. Trial is currently scheduled to occur in a few months, the parties have engaged in fact and expert discovery, and summary judgment motions have been filed. But courts have granted stays even at an advanced stage because "any weight given to [the second] factor is outweighed by the likelihood that the issues involved in summary judgment and for trial will be simplified by a stay." *AgroFresh*, 2019 WL 2327654, at *2 (granting motion to stay pending plaintiff's expected appeal to the Federal Circuit of determination of inter partes review even though discovery was already completed); *First Am. Title Ins. Co. v. MacLaren, L.L.C.*, No. 10–cv–363 (GMS), 2012 WL 769601, at *6 (D. Del. Mar. 9, 2012) ("[T]he court further concludes that the fact that discovery is complete and a trial date is set in this matter, does not outweigh the interests of judicial efficiency and consistent adjudications that can be achieved by staying this matter").

Finally, with respect to the third factor, the balance of harms, the Court finds that a stay will not unduly prejudice Calamos. The Delaware Supreme Court is scheduled to hear oral argument in *Solera* on September 16, 2020, and has a historic rate of deciding civil matters within 60 days of submission. (D.I. 53 at 4). Accordingly, any stay in this action should be relatively short. In addition, the Underlying Proceedings for which Calamos seeks coverage have concluded, and Calamos does seek emergency or injunctive relief in this action. (*See* D.I. 1-1). Rather, the complaint seeks damages and a declaration that Travelers is obligated to pay such damages to Calamos. (*Id*. ¶¶ 12-14). A mere delay in payment of damages for a company of Calamos' size and resources does not demonstrate sufficient prejudice to overcome the other factors weighing in

11

favor of a stay.  *In re Twitter, Inc. S'holder Derivative Litig.*, No. 18-62-VAC-MPT, 2018 WL 3536085, at *3–4 (D. Del. July 23, 2018) (Although "[a] stay may indeed 'delay resolution of the litigation . . . this alone does not warrant a finding that [p]laintiffs will be unduly prejudiced."), report and recommendation adopted, 2018 WL 4326986 (D. Del. Sept. 10, 2018).  Weighing these factors, Travelers' Motion to Stay is granted.

### III.   CONCLUSION

For the foregoing reasons, the Court finds that Delaware law governs Calamos' D&O liability policies.  Therefore, the portion of Calamos' summary judgment motion (D.I. 89) seeking a declaration that Delaware law governs this coverage dispute is granted, and the portion of Travelers' summary judgment motion (D.I. 93) seeking a declaration that Illinois law governs this coverage dispute is denied.  Summary judgment on the remaining issues in both motions (D.I. 89; D.I. 93) is denied without prejudice to refiling once the stay is lifted.  The parties have submitted their motions for summary judgment without the benefit of knowing which state's law governs the dispute and without the benefit of the Delaware Supreme Court's decision in *Solera*.  These decisions will likely have an impact on the issues and arguments presented in the summary judgment briefs.  Accordingly, the Court will not consider those issues and arguments in their current form.  Finally, Travelers' motion to stay (D.I. 52) is granted, and this case is stayed until the Delaware Supreme Court issues a decision in *Solera*.  An appropriate order will be entered.