IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALAMOS ASSET MANAGEMENT, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) C.A. No. 18-1510-MN<br>) |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | )<br>)<br>) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Jennifer C. Wasson and Carla M. Jones, POTTER ANDERSON & CORROON LLP, Wilmington, DE.; Matthew J. Schlesinger, Colin P. Watson, and Maura A. Sokol, COVINGTON & BURLING LLP, Washington, DC – *Attorneys for Plaintiff.*

Francis G.X. Pileggi of LEWIS BRISBOIS BISGAARD & SMITH LLP, Wilmington, DE.; Ronald P. Schiller and Daniel J. Layden of HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER, Philadelphia, PA – *Attorneys for Defendant*

February 19, 2021
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

This is an insurance coverage dispute between a Delaware corporation, Calamos Asset Management, Inc. ("Calamos"), and an excess insurer, Travelers Casualty and Surety Company of America ("Travelers"), about whether Travelers must compensate Calamos for losses incurred as a result of two consolidated actions in Delaware, one seeking appraisal of Calamos' stock and the other alleging that Calamos' officers and directors breached their fiduciary duties. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

Currently pending before the Court are multiple motions, including: Travelers' renewed Motion for Summary Judgment (D.I. 155); Calamos' renewed Motion for Summary Judgment (D.I. 163); and two Motions to Exclude the Opinions of Experts (D.I. 83; D.I. 84). For the following reasons, Traveler's motion for summary judgment will be granted, Calamos' motion for summary judgment will be denied, and both motions to exclude will be denied as moot.

**I.     BACKGROUND**

    **A.     The Insurance Policies**

Calamos holds three D&O liability policies: a primary policy with XL Specialty Insurance Company ("XL"); a first-layer excess policy with Continental Casualty Company; and a second-layer excess policy with Travelers. (D.I. 166 ¶¶ 13-15). With exceptions not relevant here, the Travelers policy "incorporates by reference, and affords coverage in accordance with and subject to, the inuring clauses, warranties, definitions, terms, conditions, exclusions and other provisions contained in the" XL primary policy. (D.I. 165-1, Ex. 10, Excess Policy Endorsement ¶ 3, page 113 of 115). In other words, to find the terms and conditions for coverage under the Travelers excess policy, the Court must look to the XL primary policy.

The XL primary policy only covers losses related to "Securities Claims." (D.I. 165-2, Ex. 11 at § I(C), page 60 of 145). Specifically, it states, "[t]he Insurer shall pay on behalf of the Company Loss resulting solely from any Securities Claim first made against the Company during the Policy Period or, if applicable, the Optional Extension Period, for a Company Wrongful Act." (*Id.*). The XL primary policy defines "Securities Claim" to mean, in relevant part:

> "a Claim . . . made against any Insured for: (1) any actual or alleged violation of any federal, state, local regulation, statute or rule (whether statutory or common law) regulating securities, including but not limited to the purchase or sale of, or offer to purchase or sell, securities which is: (a) brought by any person or entity based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the purchase or sale of, or offer to purchase or sell, securities of the Company . . . ." (*Id.* at § II(Q), page 62 of 145).

### B. The Underlying Proceedings

In December of 2016, Calamos announced that it had reached an agreement in principle to be taken private through a transaction ("the Merger") in which an affiliated entity would commence a tender offer to acquire all of the outstanding shares of Calamos' Class A common stock for $8.25 per share. (D.I. 166 ¶ 36; D.I. 157 ¶¶ 12-13).[1]

After the Merger announcement, stockholders brought lawsuits in the Court of Chancery against Calamos, its affiliates, and its directors and officers, alleging breaches of fiduciary duty in connection with the Merger. (D.I. 166 ¶ 37). These shareholder lawsuits were consolidated into an action captioned, *In re Calamos Asset Management, Inc. Stockholder Litigation, Consolidated C.A. No. 2017-0058-JTL* (hereinafter, "the Stockholder Lawsuits'). (D.I. 157 ¶ 14).

---

[1] For inexplicable reasons, Traveler's disputed this fact when it appeared in Calamos' Statement of Facts (*see* D.I. 182 ¶ 36) but then asserted the same fact in its own statement of facts (*see* D.I. 157 ¶¶ 12-13). Because Travelers wholly disputed 38 out of 53 facts and partially disputed another 9, the Court has interpreted Traveler's denials to be the product of overzealous lawyering rather than actual disputes about a material fact that would prevent granting the summary judgment for which Traveler's itself has moved.

Also after announcement of the Merger, stockholders brought actions against Calamos in the Court of Chancery seeking, pursuant to 8 *Del. C*. § 262, an appraisal of the fair value of their Calamos shares. (D.I. 166 ¶ 38). These appraisal actions were consolidated into an action captioned, *In re Appraisal of Calamos Asset Management, Inc*., Cons. C.A. No. 2017-0139-JTL (hereinafter, "the Appraisal Actions," and collectively with the Stockholder Lawsuits, "the Underlying Proceedings"). (D.I. 157 ¶ 22). Travelers has denied coverage in part for the Underlying Proceedings, giving rise to the current dispute.

## II.    LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must support its assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility

determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (internal citations omitted).

### III.   DISCUSSION

As an initial matter, Calamos has abandoned its claims with respect to the Appraisal Actions. For claims based on the Appraisal Actions, Calamos has neither opposed Travelers' motion for summary judgment nor filed its own motion. (D.I. 156, D.I. 179; D.I. 164). Accordingly, the Court will grant summary judgment in Travelers' favor with respect to the Appraisal Actions, and the remainder of this opinion addresses only coverage of the Stockholder Lawsuits.

Travelers makes several argument as to why coverage is not available for the Stockholder Lawsuits, but the Court need only address one – whether the Stockholder Lawsuits are "securities claims," within the definition of the insurance policy. Because an insurance policy is a contract, courts interpret an insurance policy "according to the plain meaning of the text and will not consider any extrinsic evidence unless the terms are ambiguous." *Masonic Home of Del., Inc. v.*

4

*Certain Underwriters at Lloyd's London*, No. 361, 2013, 2013 WL 5872283, at *1 (Del. Oct. 30, 2013). "Further, a contract is ambiguous only when it is susceptible to more than one reasonable interpretation." *Id*. Here, neither party asserts that the insurance policy is ambiguous. Therefore, the Court must apply the plain meaning.

As stated previously, Calamos' insurance policy defines "Securities Claim" to mean, in relevant part, a claim for "any actual or alleged violation of any federal, state, local regulation, statute or rule (whether statutory or ***common law***) regulating securities." (D.I. 165-2, Ex. 11 at § II(Q), page 62 of 145). Thus, a "Securities Claim" has three parts: (1) an actual or alleged violation (2) of a regulation, statute or rule, that (3) regulates securities. Here, Calamos argues that the Stockholder Lawsuits satisfy the first two parts because the term "rule" includes common law, and claims for breaches of fiduciary duties are based on violations of common law. (D.I. 179 at 8-9). Even if true, however, the Stockholder Lawsuits cannot satisfy the third part of the definition because fiduciary duty claims do not regulate securities.

In *In re Verizon Insurance Coverage Appeals*, the Delaware Supreme Court held that claims for breaches of fiduciary duties were not "securities claims" under an insurance policy with a nearly identical definition of "securities claims." 222 A.3d 566, 572 (Del. 2019). Under the policy in that case, a "securities claim" is a claim "[a]lleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities . . . ." *Id*. The one notable difference in that definition is that the *Verizon* policy, unlike the Calamos policy, did not define "rule" to include common law. But this difference does not change the result.

In *Verizon*, the Delaware Supreme Court held that fiduciary duty claims were not securities claims for two reasons. First, "[t]hese claims are not reasonably characterized as regulations, rules,

5

or statutes," because they "involve a common law duty." *Id*. at 576. This does not apply to Calamos because the insurance policy here defines "rule" to include common law.

Second, however, and "[e]qually important," was the Delaware Supreme Court's holding that fiduciary-based claims are not specific to any rule, regulation or law "*regulating securities*." *Id*. (emphasis in original). This holding is relevant here – and indeed is fatal to Plaintiff's claims. As the *Verizon* court explained, the phrase "regulating securities" imposes its own limitation. *Id*. at 574. The court elaborated: "regulations, rules, or statutes that regulate securities are those specifically directed towards securities, such as the sale, or offer for sale, of securities." *Id*. Fiduciary duty claims "are not specifically directed towards securities." *Id*. at 577. They "do not depend on a security being involved." *Id*. at 576. Instead, fiduciary duty claims "include a variety of claims when 'one person reposes special trust in another' or when 'a special duty exists on the part of one person to protect the interests of another.'" *Id*. at 576. Reading the phrase "regulating securities" to cover fiduciary duty claims would be inconsistent with the plain meaning of the term. *Id*. at 574. Similarly, the Court, here, concludes that the Stockholder Lawsuits did not involve a regulation, statute or rule (whether statutory or common law) *regulating securities* as required by the insurance policy at issue. Thus, Travelers' motion for summary judgment is granted, and Calamos' motion for summary judgment is denied.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Travelers' Motion for Summary Judgment (D.I. 155) is granted and Calamos' Motion for Summary Judgment (D.I. 163) is denied. In addition, the Motions to Exclude Expert Testimony filed by both parties (D.I. 83, D.I. 84) are denied as moot. An appropriate order will be entered.