IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CALAMOS ASSET MANAGEMENT, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 18-1510 (MN) |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | ) ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM OPINION**

Jennifer C. Wasson and Carla M. Jones, POTTER ANDERSON & CORROON LLP, Wilmington, DE.; Matthew J. Schlesinger, Colin P. Watson, and Maura A. Sokol, COVINGTON & BURLING LLP, Washington, DC. *Attorneys for Plaintiff.*

Francis G.X. Pileggi of LEWIS BRISBOIS BISGAARD & SMITH LLP, Wilmington, DE.; Ronald P. Schiller and Daniel J. Layden of HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER, Philadelphia, PA – *Attorneys for Defendant*

April 30, 2021
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

After a denial of coverage, Plaintiff Calamos Asset Management, Inc. ("Calamos") sued its excess insurer, Defendant Travelers Casualty and Surety Company of America ("Travelers") for breach of contract and a declaratory judgment that Travelers is obligated to pay for losses incurred as a result of two Delaware actions, one seeking appraisal ("the Appraisal Action") and the other alleging breaches of fiduciary duties by John Calamos and John Koudounis ("the Stockholder Action"). Calamos eventually abandoned its claim based on the Appraisal Action. (*See* D.I. 201 at 4). Then, on February 19, 2021, the Court ruled on cross-motions for summary judgment that coverage was not available for the Stockholder Action because it was not a "securities claim" within the meaning of the insurance policy (hereinafter "Policy" or "Travelers Policy"). (D.I. 201). Accordingly, judgment was entered in favor of Travelers and against Calamos and the case was closed. (D.I. 202).

Currently pending before the Court is Calamos' motion pursuant to Rule 59(e) to alter or amend the judgment. (D.I. 204). Calamos contends that the Court inadvertently closed the case without ruling on all the disputes presented in the cross-motions for summary judgment. It appears that Calamos is correct. Accordingly, this opinion addresses those remaining disputes. The Court incorporates by reference the background facts from its February 19, 2021 opinion. (D.I. 201).

**I.     LEGAL STANDARDS**

"The standard for obtaining relief under Rule 59(e) is difficult to meet." *Butamax Advanced Biofuels LLC v. Gevo Inc.*, Civ. No. 12-1036-SLR, 2015 WL 4919975, at *1 (D. Del. Aug. 18, 2015). A court should exercise its discretion to alter or amend its judgment only if the movant demonstrates one of the following: (1) an intervening change in the controlling law; (2) a need to correct a clear error of law or fact or to prevent manifest injustice; or (3) availability of

new evidence not available when the judgment was granted. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

## II. DISCUSSION

From the beginning of this litigation, Calamos has sought coverage from Travelers for the $22,376,082.64 paid to settle the Stockholder Action under both §§ I(B) and I(C) of the Policy (hereinafter "Section B" and "Section C"). Section B is directed to "reimbursement" coverage. (D.I. 204 at 1). Under that section, if certain criteria are satisfied, Travelers is obligated to pay on behalf of Calamos a loss that Calamos is required or permitted to pay as indemnification to any Insured Person. (D.I. 158, Ex. 2 at § I(B)). Section C is directed to "entity" coverage. (D.I. 204 at 1). There, if a different set of criteria are satisfied, Travelers is obligated to pay Calamos for a loss to the company resulting from a securities claim. (D.I. 158, Ex. 2 at § I(C)). Thus, Section B and Section C are independent grounds for coverage. Although it appears that the parties understood that coverage was being sought under both Section B and Section C, neither party explained this to the Court until Calamos' motion for reargument.[1]

Because the parties did not explain that there were two independent paths to coverage, the Court's ruling on the cross-motions for summary judgment resolved only the Section C coverage. Calamos' motion to alter or amend judgment seeks a ruling on the availability of Section B coverage for Mr. Calamos and Mr. Koudounis. Travelers does not dispute that Section B coverage was an issue in the case, only whether it is in fact available. (*See* D.I. 205). Accordingly, the

---

[1] Although Calamos was apparently seeking a declaratory judgment in its favor that Travelers was obligated to provide coverage under Section B or Section C, it did not explicitly state this in its complaint, motion, or briefs. (*See* D.I. 1-1; D.I. 163; D.I. 164; D.I. 191). Calamos quoted each policy section once in the facts portion of its opening brief but offered no explanation as to the relevance and never referred back to these sections in the argument section of the brief. (*See* D.I. 164 at 3).

Court will consider Calamos' motion to alter or amend the judgment. (D.I. 204). More specifically, the Court will now rule on the undecided issues from the parties' cross-motions for summary judgment. (D.I. 155; D.I. 163). There are three.

First, Travelers argues that coverage for Mr. Calamos is barred because of the dual-capacity exclusion. (D.I. 205 at 3). In the alternative, Travelers argues that coverage is not available to Mr. Calamos for actions in his capacity as a stockholder. (*Id*. at 5). Second, Travelers argues that Calamos cannot reach the "attachment point" for the Travelers Policy (*i.e.*, the dollar amount at which the Travelers Policy kicks-in) based on the exposure of Mr. Koudounis alone and, therefore, coverage is not available under Section B at all. (*Id*. at 6). Finally, Calamos seeks defense costs reasonably related to its defense of the Stockholder Action. (D.I. 204 at 8). Each argument is addressed in turn.

### A. Coverage for Mr. Calamos

#### 1. The Dual-Capacity Exclusion

Travelers contends that a dual-capacity exclusion completely bars Mr. Calamos from coverage. (D.I. 156 at 19). Calamos contends that Travelers has waived its right to raise this argument. (D.I. 207 at 8). The Court does not address the waiver issue, because even if the argument were not waived, the Court concludes that the dual-capacity exclusion does not apply.

The dual-capacity exclusion states:

> The Insurer shall not be liable to make any payment for **Loss** in connection with that portion of any **Claim** made against an **Insured Person** . . . based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving an **Insured Person** acting in their capacity as an **Insured Person** of any entity other than the **Company** . . . .

(D.I. 158, Ex. 2 at § III(I) and End. 36) (emphasis in original). In relevant part, the Policy defines "Insured Person" to mean a "director or officer," and the term "Company" to mean Calamos or Calamos Partners LLC, but not Calamos Family Partners. (*Id*. at § II and End. 8). Accordingly,

3

the dual-capacity exclusion bars coverage if three requirements are satisfied: (1) the claim "indirectly results from" or "in any way involves" (2) Mr. Calamos' acts as a director or officer (3) of Calamos Family Partners.

The complaint in the Stockholder Action asserted two claims, which are discussed in reverse order. First is a claim for breach of fiduciary duty against Mr. Calamos in his capacity as the officer and director of Calamos. (D.I. 158, Ex. 4 ¶¶ 100-104). Because this claim is based on Mr. Calamos' positions at Calamos, and not Calamos Family Partners, the dual-capacity exclusion by its plains terms does not apply.

Second is a claim for breach of fiduciary duty against Calamos' "controlling stockholders," which the complaint defined to include Mr. Calamos, Calamos Partners LLC, Calamos Family Partners, and another entity not relevant here. (*Id.*). Mr. Calamos held various positions at various entities. Travelers relies on the fact that Mr. Calamos was a director and officer of Calamos Family Partners to contend that the controlling stockholder claim was actually directed to his acts as a director and officer of that uninsured entity. (D.I. 156 at 18). The Court, however, takes the complaint in the Stockholder Action at face value – it addressed the acts of the controlling stockholders in their capacity as stockholders.[2] Because the second claim is based on Mr. Calamos' acts as a stockholder, and not as a director or officer, the dual-capacity exclusion by its plains terms does not apply.

---

2     At various times in the briefs, both parties assert that the controlling stockholder claim should be read as allegations against Mr. Calamos in whatever capacity best suits their needs for that particular argument. (*See* D.I. 156 at (the controlling stockholder claim is about Mr. Calamos' acts as an officer and director of Calamos Family Partners); D.I. 179 at 16 (the stockholder claim is about Mr. Calamos' abuse of his power as an officer of Calamos Partners LLC); D.I. 189 at 10 (the stockholder claim is "first and foremost" about Mr. Calamos acts as a controlling shareholder"). Ultimately, however, only stockholders can exercise the powers granted to stockholders.

### 2. Stockholder Capacity and Allocation

Section B of the Travelers Policy covers Insured Persons for a "Company Loss which the Company is required or permitted to pay as indemnification to any of the Insured Persons resulting from a Claim . . . for a Wrongful Act." (D.I. 158, Ex. 2 § I(B) (emphasis omitted)). Per the Policy, "Wrongful Act" means in relevant part a "breach of duty by any Insured Person while acting in his or her capacity as an Insured Person. . . ." (*Id*. at § II(S) (emphasis omitted)). The definition of "Insured Persons" includes directors and officers of certain companies, but not stockholders. (*Id*. at § II(J)). Accordingly, the Travelers Policy provides coverage when Mr. Calamos is sued based on his acts as an officer and director of Calamos but not when he is sued based on his acts as a controlling stockholder.

Here, the Stockholder Action alleged claims against Mr. Calamos in both his insured and uninsured capacity. Thus, the parties dispute how the settlement amount from the Stockholder Action should be allocated between insured and uninsured coverage and who has the burden of proving such allocation. As an initial matter, Calamos argues that no allocation is warranted. (D.I. 164 at 18). In the alternative, Calamos argues that allocation should be made according to the Larger Settlement Rule. (*Id*. at 16-17). Finally, both parties assert that regardless of which allocation rule applies the other party has the burden of proving allocation and, therefore, the other party should lose for failure to satisfy their burden. Each argument is addressed in turn.

#### a. Whether No Allocation is Warranted

On the cross-motions for summary judgment, Calamos raised a hodgepodge of arguments to contend that no allocation is warranted. Several are based on assertions of fact with no connection to any legal principal or case law showing that under such facts no allocation is warranted. (*See* D.I. 164 at 18 (stating that the Stockholder Action settlement agreement did not

5

contain an allocation); *id*. (stating that Mr. Koudounis was not sued in his capacity as a controlling stockholder)). One is based on the assertion that the Stockholder Action is a "Securities Claim" within the Travelers Policy, an argument the Court has already rejected. (*Id*.; D.I. 201). This leaves the last argument: that there can be no allocation between covered and uncovered capacities when an insured, such as Mr. Calamos, is jointly and severally liable, because in that situation the insured is legally and finally liable for the entire amount of any judgment. (D.I. 164 at 18).

The last argument is quickly rejected for two reasons. First, although it may be true that Mr. Calamos, in his capacity as an officer of director of an insured entity, was jointly and severally liable for the entire settlement amount, Calamos failed to cite any part of the record establishing this fact. (*See id*.). On a motion for summary judgment, the Court cannot assume that certain facts are true and undisputed. Second, the case Calamos cites in support of its assertion addresses neither allocation nor joint and several liability. (*See id*. (citing *IDT Corp. v. U.S. Specialty Ins. Co*., C.A. No. N18C-03-032 PRW CCLD, 2019 WL 413692, at *10 (Del. Jan. 31, 2019)). Because Calamos did not establish either the factual or legal predict for this argument, it is rejected.

        **b.**        **The Larger Settlement Rule**

Calamos relies on *Murdock* to argue that if allocation is required, then under Delaware law, the "Larger Settlement Rule" governs this case. (D.I. 179 at 14-15; D.I. 164 at 16 (citing *Arch Ins. Co. v. Murdock*, C.A. No. N16C-010104 EMD CCLD, 2020 Del. Super. LEXIS 156 (Del. Super. Ct. Jan. 17, 2020) *aff'd RSUI Indem. Co. v. Murdock*, No. 154, 2020, 2021 WL 803867, at *2 (Del. Mar. 3, 2021)). "The Larger Settlement Rule applies in those situations where . . . the parties cannot agree as to the allocation of covered and uncovered claims; and . . . the allocation provision [in the insurance policy] does not provide for a specific allocation method." *Murdock*, 2020 Del. Super. LEXIS at *18. The Rule provides that "allocation is appropriate only if, and only to the

6

extent that, the defense or settlement costs of the litigation were, by virtue of the wrongful acts of the uninsured parties, higher than they would have been had only the insured parties been defended or settled." *Id*.  In other words, the full amount of an insured's settlement is covered unless the settlement was increased by the presence of uninsured parties or non-covered claims.

In *Murdock*, excess insurance carriers sought a declaratory judgment that they had no obligation to indemnify the insured and that they were entitled to subrogation. *Murdock*, 2020 Del. Super. LEXIS 156 at *2-3.  In its opinion, the *Murdock* court found that the allocation provision in the insurance policy was unambiguous but failed to provide for a specific allocation method in the event that the parties could not agree on allocation, as had happened. *Id*. at *16-17. Absent policy language governing allocation when the parties disagreed, the *Murdock* court held that the "Larger Settlement Rule" would apply. *Id*. at *17.

In opposition, Travelers relies on *Verizon Communications* to argue that the policy language in *Murdock* can be distinguished, and thus the Larger Settlement Rule does not apply. (D.I. 189 at 9 (citing *Verizon Commc'ns Inc. v. Ill. Nat'l Ins. Co*., C.A. No. N14C-06,048 WCC CCLD, 2020 WL 8509725 (Del. Super. Ct. Dec. 11, 2020))).  In *Verizon*, an insured sued its insurer seeking to recover defense costs for a covered officer after the officer and an uninsured entity were named defendants in the underlying transaction litigation. *Verizon*, 2020 WL 8509725 at *1.  The *Verizon* court distinguished *Murdock* on the basis that the *Murdock* policy "failed to explicitly require that [a particular] allocation method be applied upon disagreement," whereas the *Verizon* policy "require[d] that upon a disagreement on allocation, [the insurer] will pay what it believes is fair and equitable until a different amount is agreed upon or determined in accordance with the Policy and law." *Id*. at *5.  The *Verizon* court acknowledged that the allocation method in the event of disagreement "should have been defined more precisely" and would be "difficult at best"

7

to employ. *Id*. Nevertheless, "the Allocation Provision sufficiently provides a governing allocation method and thus the Larger Settlement Rule is inapplicable." *Id*.

A careful comparison of the allocation provision in the Travelers Policy to the allocation provisions in the *Murdock* and *Verizon* policies shows that the language in the Travelers Policy is like the *Verizon* policy and unlike the *Murdock* policy.[3] Specifically, the Travelers Policy includes a provision governing allocation in the event that the parties disagree (hereinafter a "disagreement clause"), which the *Verizon* policy similarly included but the *Murdock* policy did not. The Travelers Policy states, "*In the event that an agreement cannot be reached* between the Insurer and the Insured as to an allocation of Loss," then the insurer should advance a certain specific portion "until a final amount is agreed upon or determined pursuant to the provisions of this Policy and applicable law." (D.I. 158, Ex. 2 § V(E) (emphasis added)).

Calamos argues that the Travelers Policy is not like the *Verizon* policy because the parties here are initially required to "use their best efforts to determine a fair and appropriate allocation" whereas the *Verizon* policy simply requires that "there shall be a fair and equitable allocation," without any mention of best efforts. (D.I. 179 at 15 & 15 n.8). The Court finds that the lack of reference to best efforts in *Verizon* does not distinguish the case, because the pertinent comparison is the existence of a disagreement clause. In addition, the disagreement clauses in both *Verizon* and the Travelers Policy employ the same key phrases and operate in essentially the same manner.

First, both disagreement clauses require allocation to be based on "the provisions of this policy and applicable law." D.I. 159, Ex. 2 § V(E); *Verizon*, 2020 WL 8509725 at *2.

---

[3] For a side-by-side comparison of the entire allocation provision of all three policies, see Appendix A hereto.

Second, the *Verizon* court read the "provisions of this policy" language as referring back to "fair and equitable allocation." *Verizon*, 2020 WL 8509725 at *5. For Travelers, it must be the same. The Travelers Policy has two relevant provisions in the initial allocation clause: "best efforts" and "fair and appropriate allocation." D.I. 159, Ex. 2 § V(D)-(E). The disagreement clause kicks in only when the best efforts in the initial clause have failed. If the "provisions of this policy" phrase required more best efforts after those efforts have failed, it would create nothing but a vicious cycle that would render the disagreement clause meaningless. The Court must "interpret an insurance policy in a manner that does not render any provisions 'illusory or meaningless.'" *Murdock*, 2020 Del. Super. LEXIS at *14 (quoting *O'Brien v. Progressive Northern Ins.*, 785 A.2d 281, 287 (Del. 2001)). The only provision of the policy left after (failed) best efforts is the "fair and appropriate allocation." Thus, the Court interprets the "provisions of this policy" language in the Travelers disagreement clause to refer back to "fair and appropriate allocation."

Finally, the Travelers Policy requires a "fair and *appropriate*" allocation whereas the *Verizon* policy requires a "fair and *equitable*" allocation. D.I. 159, Ex. 2 § V(D); *Verizon*, 2020 WL 8509725 at *2. But these two terms are essentially equivalent, because both policies state that a "fair and appropriate/equitable" allocation must "take into account the relative legal and financial exposures of, and relative benefits obtained" by the insured and uninsured matters. *Id*. The Court agrees with *Verizon* that this allocation rule, which the parties refer to as the "relative-exposure" rule, will be "difficult at best" to employ, but it nevertheless "sufficiently provides a governing allocation method," such that the Larger Settlement Rule does not apply. *Verizon*, 2020 WL 8509725 at *5.

### c. The Burden on Allocation

The parties dispute who has the burden of proving the amounts to be allocated. Under Delaware law, the insured bears the burden of proving that a claim falls within the scope of coverage, and if satisfied, the insurer bears the burden of proving that a policy exclusion applies. *RSUI Indem.*, 2021 WL 803867, at *13; *Legion Partners Asset Mgmt., LLC v. Underwriters at Lloyds London*, C.A. No. N19C-08-305 AML CCLD, 2020 WL 5757341, at *7 (Del. Super. Ct. Sept. 25, 2020). But "coverage questions," including whether a claim falls within a policy exclusion, "are distinct from allocation questions." *UnitedHealth Grp. Inc. v. Columbia Cas. Co.*, 941 F. Supp.2d 1029, 1037 (D. Minn. 2013). And Delaware has not definitively stated who has the burden by default on allocation.

Looking to other jurisdictions, "courts generally place the burden on the insured to allocate settlement between covered and non-covered claims unless the conduct of the parties justifies placing the burden on the insurer." *Clackamas County v. Midwest Employers Cas. Co.*, No. 07–CV–780–PK, 2009 WL 4916364, at *10 (D. Or. Dec. 14, 2009) (collecting cases). For example, a court may shift the burden on allocation to the insurer when "the insurer was obligated to seek an allocated verdict or advise the insured of the need for one, but failed to fulfill that obligation." *Premier Parks, Inc. v. TIG Ins. Co.*, C.A. No. 02C-04-126-PLA, 2006 WL 2709235, at *10 (Del. Super. Ct. Sept. 21, 2006).

The only Delaware case presented by the parties or found by the Court that touched upon the burden on allocation was *Premier Parks*. In that case, the court found that circumstances warranted application of a burden shifting exception borrowed from Oklahoma law. *Premier Parks*, 2006 WL 2709235, at *10-11 (adopting the rule and rationale in *Gay & Taylor v. St. Paul Fire & Marine Ins. Co.*, 550 F. Supp. 710 (W.D. Okla. 1981). Because the Delaware court applied

an exception that shifted the burden to the insurer, it implied but never directly stated that the default general rule should place the burden of allocation on the insured. Accordingly, the default rule under Delaware law remains uncertain because it was never directly and definitively decided.

In determining which default rule should apply here, the Court finds that the better reasoned cases support the conclusion that the initial burden for proving allocation should be on the insured. As one court explained:

> The party seeking coverage must show the existence and extent of a loss covered by the policy. Further, the insured has better access to information relevant to allocation than does its insurer, particularly, as here, where the insured chose counsel for itself and its officers and controlled the defense.

*Raychem Corp. v. Federal Ins. Co.*, 853 F. Supp. 1170, 1176 (N.D. Cal. 1994); *see also UnitedHealth Grp.*, 941 F. Supp. 2d at 1036-37 (placing the burden on the insured where insurers "did not play a meaningful role" in settlement negotiations, insured was "in a better position to know how the settling parties valued the claims" and "knew that allocation would almost certainly become a crucial issue in coverage litigation"); *Executive Risk Indem., Inc. v. Cigna Corp.*, 74 A.3d 179, 183 (Pa. Super. 2013) (placing burden on insured because insured "drafted the settlement agreement, chose counsel to participate in the settlement negotiations, controlled the underlying litigation and defense and had better access to the relevant information and intentions of the parties in the deliberative settlement process"); *John Hancock Healthplan of Pa., Inc. v. Lexington Ins. Co.*, CIV. A. No. 88–2308, 1990 WL 21137, at *3 (E.D. Pa. Mar. 6, 1990) (placing the burden on the insured because this "comports with the general notion that the plaintiff has the burden of proving its case," and "the plaintiff is the party to this matter that settled the case and is in a better position to prove what part of the settlement amount represents the settlement of claims against the officers and directors").

The Court is unpersuaded by the cases Calamos cites to show that the initial burden for allocation should be on the insurer. First, Calamos relies on a passage in *Murdock* which was a recap of a party's contention and, therefore not a statement of Delaware law. (*See* D.I. 164 at 16 (quoting the following sentence in *Murdock*, 2020 Del. Super. LEXIS 156 at *23 without the struck portion: "~~Defendants claim that~~ under the Larger Settlement Rule the entire amounts of the Settlement . . . are recoverable unless the Insurers can establish that some uncovered liability increased the amount of these settlements")). Ultimately, the *Murdock* court was silent as to who had the burden of proving allocation and specifically stated that the issue of burdens would be discussed at an upcoming conference. *Murdock*, 2020 Del. Super. LEXIS 156 at *23. Thus, *Murdock* does not stand for the proposition that the insurer has the burden on allocation.

Second, Calamos relies on *PepsiCo*, a non-Delaware case with a legal rationale several courts have deemed "questionable at best." *UnitedHealth Grp.*, 941 F. Supp. 2d at 1039. *PepsiCo* did not offer any analysis for why it was placing the burden on the insurer, but simply cited to *H.S. Equities*. *See PepsiCo, Inc. v. Cont'l Cas. Co.*, 640 F. Supp. 656, 662 (S.D.N.Y.1986) (citing *H.S. Equities, Inc. v. Hartford Accident & Indem. Co.*, 661 F.2d 264, 269 (2d Cir. 1981). For its part, *H.S. Equities* did not involve a dispute over who bears the burden of proof on allocation.

Instead, the issue presented in *H.S. Equities* was whether the claims against an individual employee named Drecker fell within the scope of coverage. 661 F.2d at 266-67. The indemnity bond covered any loss "through any dishonest, fraudulent or criminal act of any of the Employees." *Id*. at 266. HS Equities settled claims against itself and Drecker for one lump sum, and then demanded reimbursement from Hartford. *Id*. at 267. Hartford denied coverage on the ground that there was no evidence of Drecker's dishonesty. *Id*. The Second Circuit held that when an indemnitor, such as Hartford, "has been accorded a reasonable opportunity to defend a third-party

12

action against the indemnitee and declines, the good-faith settlement of the third-party claim by the indemnitee is presumptive evidence of the facts alleged in the third-party complaint." *Id.* at 268. In other words, the settlement was presumptive evidence that Drecker had acted dishonestly as alleged in the settled claims. The trial court erred in holding that the settlement was conclusive rather than presumptive evidence of Drecker's dishonesty. *Id*. at 269. Accordingly, *H.S. Equities* addressed how a settlement can be used as evidence that a loss falls within the scope of coverage, not how to allocate between covered and uncovered claims. Because *PepsiCo*'s legal rational is not on firm footing, this Court, like other courts, does not find it persuasive. *See UnitedHealth Grp.*, 941 F. Supp. 2d at 1039; *John Hancock*, 1990 WL 21137, at *2.

    **B.    Coverage Based on Mr. Koudounis' Exposure**

Travelers does not dispute that Mr. Koudounis was sued in his capacity as an officer and director of an insured entity, and therefore, any part of the settlement attributed to his legal exposure is a covered loss. (D.I. 205 at 6). Instead, Travelers contends that the portion of the settlement attributed to Mr. Koudounis alone, if that is the only covered loss, does not reach the $21 million attachment point and, therefore, coverage under the Travelers Policy never kicks in. (*Id*.).

As an initial matter, Travelers did not make this argument in its summary judgment briefs or move on summary judgment for a declaration that Mr. Koudounis' coverage is insufficient to reach the attachment point. (D.I. 155; D.I. 156). Even if it had, this argument cannot be resolved at this time because the Court has not yet determined if Mr. Koudounis is the only covered loss. Later proceedings around allocation may show that there is some covered loss that can be attributed to Mr. Calamos. Accordingly, the Court declines to decide this issue at this time.

C.  **Reasonably Related Defense Costs**

In its motion to amend, Calamos argues that one outstanding issue briefed on summary judgment but not resolved by the Court's earlier ruling was whether Calamos was entitled to all defense costs "reasonably related" to the Stockholder Action. (*See* D.I. 204 at 8; D.I. 164 at 19). According to Calamos, under the "reasonably related" rule, "an insurer must cover all costs that are 'reasonably related' to the defense of covered claims, even if the defense costs at issue also benefited 'uncovered' claims." (D.I. 164 at 19). Travelers responds that Delaware has not adopted the reasonably related rule. (D.I. 177 at 18-19).

The problem for Calamos is that the reasonably related rule requires a covered claim and Calamos has not identified one. In its briefs on summary judgment, Calamos asserted that the Stockholder Action was a covered claim. But that assertion was rejected in the Court's earlier opinion. (D.I. 201). In its motion to amend, Calamos did not explain how the "reasonably related" rule is still a live issue after the Court's earlier ruling. (D.I. 204; D.I. 207). Accordingly, the Court denies Calamos' motion for summary judgment on the reasonably related defense costs. (D.I. 163 ¶ 4).

## III. CONCLUSION

In summary, the Court previously denied the portion of Calamos' summary judgment motion seeking a declaration that the underlying common law breach of fiduciary claim was not a "Securities Claim" within the meaning of the Policy. (D.I. 163 ¶ 2; D.I. 201). Here, the Court denies the portion of Calamos' summary judgment motion seeking a declaration that allocation will be determined pursuant to the Larger Settlement Rule and that Travelers, as the insurer, has the burden to prove allocation. (D.I. 163 ¶ 3). The Court also denies the portion of Calamos' summary judgment motion seeking a declaration that Travelers must cover any defense costs

reasonably related to the Stockholder Action. (D.I. 163 ¶ 4). Together, this means that the Court's prior order denying Calamos' motion for summary (D.I. 202 ¶ 3) remains unchanged.

The Court previously granted the potion of Travelers' summary judgment motion seeking a declaration that coverage was not available to the entity defendants because the underlying actions were not "securities claims" within the meaning of the policy. (D.I. 155 ¶ 2; D.I. 201).

Here, the Court denies in part and grants in part the portion of Travelers' summary judgment motion seeking a declaration that coverage is not available to Mr. Calamos under the dual-capacity exclusion or in his capacity as a controlling stockholder. (D.I. 155 ¶ 3). The motion is denied in part because the dual-capacity exclusion does not bar coverage. The motion is granted in part because, by the plain terms of the Policy, coverage is not available to Mr. Calamos in his capacity as a controlling stockholder. What effect, if any, the lack of coverage for Mr. Calamos in his capacity as a controlling stockholder has on allocation has not yet been determined and cannot be determined at this stage of the proceedings.

Although Travelers argued that Mr. Koudounis' coverage is insufficient to reach the Policy's attachment point, it did not move for summary judgment on this issue. Accordingly, the Court will not issue a ruling related to Mr. Koudounis' coverage.

Finally, on the motion to amend, Travelers did not renew its argument raised on summary judgment that the claimed loss constituted uninsurable restitution or disgorgement and thus is not a covered loss for any Insured. (*See* D.I. 155 ¶ 1; D.I. 156 at 4; D.I. 205). Because this was the only argument from summary judgment that Travelers did not renew on the motion to amend, the Court considered it abandoned. Accordingly, the Court will deny the portion of Travelers summary judgment motion seeking a declaration that the loss is uninsurable restitution or disgorgement. (D.I. 155 ¶ 1).

Together these various rulings on Travelers' motion mean that the Court's prior order granting Travelers' motion for summary judgment (D.I. 202 ¶ 1) must be amended so that the motion is now denied in part and granted in part.  For this reason, the Court must also vacate the portion of its prior order entering judgment in favor of Travelers and against Calamos, and directing the Clerk of the Court to close the case.  (*Id*. ¶¶ 2, 6).  An appropriate order reflecting these changes will be entered.

Finally, the Court declines to grant Calamos' footnote request in its motion to amend to revive the parties' motions to exclude (D.I. 83; D.I. 84) which were denied in the Court's prior order as moot (D.I. 202 ¶¶ 4-5).  (*See* D.I. 204 at 8 n.4).  If any issues from those motions remain in dispute after the Court's previous decision on summary judgment and this decision on the motion to amend, the parties may file new motions in accordance with a schedule governing the remainder of this case.

# APPENDIX A

For the ease of comparison, the allocation provisions below have been reformatted.

| Travelers[4] | *Murdock*[5] | *Verizon*[6] |
|---|---|---|
| Section V(D)<br><br>If both Loss covered by this Policy and Loss not covered by this Policy are incurred, …<br><br>the Insured and the Insurer will **use their best efforts to determine a fair and appropriate allocation** of Loss between that portion of Loss that is covered under this Policy and that portion of Loss that is not covered under this Policy.<br><br>Additionally, the Insured and the Insurer agree that in determining a fair and appropriate allocation of Loss, **the parties will take into account the relative legal and financial exposures of, and relative benefits obtained** in connection with the defense and/or settlement of the Claim by; the Insured and others. | If in any Claim, the Insureds who are afforded coverage for such Claim incur Loss jointly with others … who are not afforded coverage for such Claim, or incur an amount consisting of both Loss covered by this Policy and loss not covered by this Policy because such Claim includes both covered and uncovered matters,<br><br>then the Insureds and the Insurer agree to **use their best efforts to determine a fair and proper allocation** of covered Loss.<br><br>The Insurer's obligation shall relate only to those sums allocated to matters and Insureds which are afforded coverage.<br><br>In making such determination, **the parties shall take into account the relative legal and financial exposures** of the Insureds in connection with the defense and/or settlement of the Claim. | In connection with any Claim, …, with respect to: (i) Defense Costs jointly incurred by, (ii) any joint settlement entered into by, or (iii) any Judgment of joint and several liability against any Organization and any insured Person,<br><br>**there shall be a fair and equitable allocation** as between any such Organization and any such Insured Person,<br><br>**taking into account the relative legal and financial exposures and the relative benefits obtained** by any such Insured Person and any such Organization,<br><br>without any presumption that the coverage afforded to the Insured Person shall in any way reduce the allocation to the Organization which shall not be Insured for such allocation. |

---

[4]     D.I. 158, Ex. 2 § V(D) – (E).

[5]     *Murdock*, 2020 Del. Super. LEXIS 156 at *6.

[6]     *Verizon*, 2020 WL 8509725 at *2.

1

| Travelers[4] | *Murdock*[5] | *Verizon*[6] |
|---|---|---|
| Section V(E)<br><br>**In the event that an agreement cannot be reached** between the Insurer and the Insured as to an allocation of Loss, as described in (D) above,<br><br>then **the insurer shall advance** that portion of Loss which the Insured and the Insurer agree is not in dispute<br><br>**until a final amount is agreed upon or determined pursuant to the provisions of this Policy and applicable law**. | | **In the event that** a determination as to the amount of Defense Costs to be advanced under the policy **cannot be agreed to**,<br><br>then **the Insurer shall advance** Defense Costs excess of any applicable retention amount which the insurer states to be fair and equitable<br><br>**until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law**. |